IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 3:23-cr-37–HEH |
| ) | |
| CURTIS DICKERSON, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**
**(Resolving Pretrial Motions)**

THIS MATTER is before the Court on five (5) pretrial motions. The Government filed two Motions in Limine: (1) to Admit Certain Coconspirator Statements (the "Rule 801(d)(2)(E) Motion," ECF No. 35), filed on December 30, 2023; and (2) to Admit Certain Evidence under Federal Rule of Evidence 402 or as Res Gestae or, Alternatively, under Federal Rule of Evidence 404(b) (the "Rule 402/404(b) Motion," ECF No. 36), filed on December 31, 2023. The Government also filed a Motion to Utilize Supplemental Discovery in Government's Case in Chief (the "Supplemental Discovery Motion," ECF No. 50) on January 19, 2024. Defendant Curtis Dickerson ("Defendant") filed a Motion to Exclude Irrelevant Evidence (the "Motion to Exclude," ECF No. 45) on January 18, 2024, and a Motion to Compel (ECF No. 64) on February 12, 2024. The parties have submitted memoranda supporting their respective positions and the Court heard oral argument on February 13, 2024. For the reasons that follow, the Court grants in part and denies in part the motions.

## I. BACKGROUND

On March 21, 2023, Defendant was indicted by a federal grand jury for Conspiracy to Distribute Cocaine and Fentanyl, in violation of Title 21, U.S.C. §§ 846, 841(a)(1) and (b)(1)(a) ("Count 1"); Possess with the Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) ("Count 2"); Maintaining Drug Involved Premises, in violation of 21 U.S.C. § 856(a)(2) ("Count 3"); Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) ("Count 4"); and Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) ("Count 5"). (Indictment at 1–3, ECF No. 14.) Defendant was arraigned on March 30, 2023. (ECF No. 17.) A grand jury returned a Superseding Indictment on February 6, 2024, adding heroin to the list of drugs in Counts 1 and 2 and amending the description of the gun in Count 5. (Superseding Indictment at 1–3, ECF No. 57.) The Superseding Indictment was dismissed by the Court on February 15, 2024. (Mem. Order at 6, ECF No. 84.)

Defendant's initial trial was set to begin on May 22, 2023. (Minute Entry at 1, ECF No. 17.) On April 25, 2023, Defendant requested new counsel and the Court allowed him to retain a new attorney. (*See* Letter Mot. at 1, ECF No. 18; Order at 1, ECF No. 22.) Defendant's trial was rescheduled to October 23, 2023. (Minute Entry at 1, ECF No. 26.) Defendant's counsel then filed a Motion to Withdraw (ECF No. 28) on September 25, 2023, due to substantial conflicts between counsel and Defendant. The Court granted the Motion to Withdraw, Defendant again retained new counsel, and his trial was rescheduled to January 16, 2024. (Order at 1, ECF No. 30; Minute Entry at 1,

2

ECF No. 34.) Due to discovery issues, the Court again moved the trial date to February 20, 2024, and ordered the Government to provide all discovery to Defendant by January 8, 2024. (Order at 1, ECF No. 43; Order at 3, ECF No. 44.)

## II. ANALYSIS

### A. Government's Rule 801(d)(2)(E) Motion

The Government seeks to enter into evidence coconspirator statements relating to Defendant's drug trafficking activities. (R. 801(d)(2)(E) Mot. at 1.) Rule 801(d)(2)(E) provides that statements "offered against an opposing party and . . . made by the party's coconspirator during and in furtherance of the conspiracy" are not hearsay. FED. R. EVID. 801(d)(2)(E). "In order to admit a statement under 801(d)(2)(E), the moving party must show that (i) a conspiracy did, in fact, exist, (ii) the declarant and the defendant were members of the conspiracy, and (iii) the statement was made in the course of, and in furtherance, of the conspiracy." *United States v. Graham*, 711 F.3d 445, 453 (4th Cir. 2013).

"A statement by a co-conspirator is made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." *Id.* (quoting *United States v. Shores*, 33 F.3d 438, 443 (4th Cir. 1994), cert. denied, 514 U.S. 1019 (1995)) (internal quotations omitted). "Statements made by a co-conspirator to a third party who is not then a member of the conspiracy are considered to be 'in furtherance' of the conspiracy if they are designed to induce that party either to join the conspiracy or to act in a way that will assist it in accomplishing its objectives, . . . but not if they were intended to be nothing more than idle chatter or casual conversation

3

about past events." *Shores*, 33 F.3d at 444 (internal citations omitted). In order to determine the intent of a statement to a third party, a court must carefully examine the context of the statement. *Id.*

The evidence that the Government seeks to enter involves statements made by Steven Oliver ("Oliver") to a confidential informant ("CI"). (R. 801(d)(2)(E) Mot. at 1.) The CI purchased heroin mixed with fentanyl from Oliver on a regular basis from 2020 to 2022. (*Id.* at 3–4; Gov't's Reply in Supp. of Rule 801(d)(2)(E) Mot. at 3, ECF No. 53.) Oliver told the CI that his supplier was "Big Bro" and that "Big Bro" was connected to a tobacco shop on Hull Street Road. (R. 801(d)(2)(E) Mot. at 4.) Some of the references to "Big Bro" were made in response to the CI's desire to purchase drugs directly from "Big Bro" and the CI's concerns that "Big Bro" was an unreliable source of supply. (*Id.*)

The Government states that it will show that "Big Bro" is Defendant because Defendant owns the tobacco shop on Hull Street Road and Defendant's phone number was saved in Oliver's phone as "Bro." (*Id.* at 4–6.) It also argues that Oliver was a coconspirator with Defendant and that his statements were made during the conspiracy and in furtherance of the conspiracy because they identified the source of the drugs with "an eye toward future sales." (*Id.* at 7–10.)

Defendant responds that the Government is attempting to avoid calling Oliver as a witness and is, instead, using the CI as a vehicle to admit Oliver's statements. (Def.'s Opp'n to R. 801(d)(2)(E) Mot. at 1–2, ECF No. 47.) This would prevent Defendant from using Oliver's prior felony conviction to impeach him. (*Id.* at 2.) Defendant next argues that the Government has not provided enough facts about the context of the statements

for the Court to determine whether they were in furtherance of the conspiracy or were mere idle chatter. (*Id.* at 2–3.) Defendant also contends that the statements are irrelevant and are unfairly prejudicial because Defendant is not charged with possession or distribution of heroin. (*Id.* at 3–4.) Alternatively, the Court should conduct a *James* hearing to determine the admissibility of such evidence. (*Id.* at 4.); *see United States v. James*, 590 F.2d 575 (5th Cir. 1979). Finally, Defendant argues that there is no evidence that "Big Bro" and Defendant are the same person. (*Id.* at 4–5.)

First, the Government responds that it is not required to call Oliver as a witness. (Gov't's Reply in Supp. of R. 801(d)(2)(E) Mot. at 1.) Additionally, during oral argument, the Government stated that it believed Oliver was unavailable as a witness because he currently has an appeal of his criminal conviction related to drug distribution pending before the Fourth Circuit. Next, the Government asserts that there are two (2) pieces of evidence that directly connect the nickname "Big Bro" to Defendant. (*Id.* at 2–3.) The Government also states that the substance the CI purchased from Oliver contained a mixture of both heroin and fentanyl, thus making it relevant to Counts 1 and 2, which involve the distribution of fentanyl. (*Id.* at 3.) Finally, the Government argues that a *James* hearing is not required in the Fourth Circuit. (Gov't's Reply in Supp. of R. 801(d)(2)(E) Mot. at 1–4.)

Here, a *James* hearing is not required. "[A] trial judge retains the option to admit conditionally the declarations of co-conspirators before the conspiracy has been independently established, subject to the subsequent fulfillment of that factual predicate." *United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir. 1983) (internal citation omitted).

5

The Court finds that, if the Government fulfills the factual predicate, Oliver's statements about "Big Bro" are admissible. First, the Government is correct that it is not required to call Oliver as a witness, and it is unclear if Oliver is available as a witness. Next, the statements are relevant because the drugs that Oliver was selling, and that the Government alleges Defendant was supplying, contained fentanyl *and* heroin. This makes these statements relevant to Defendant's charges of distributing fentanyl. Additionally, mentioning heroin is not unfairly prejudicial to Defendant because heroin was the vehicle used to distribute fentanyl in this case. Finally, the Government has proffered enough to demonstrate that they can connect "Big Bro" and Defendant as the same person.

However, as precedent dictates, the determination of whether a statement was made in furtherance of a conspiracy is highly context specific. *See Shores*, 33 F.3d at 444. Accordingly, the Government must lay a proper foundation establishing the *Graham* elements at trial for Oliver's statements to be admissible. *See Graham*, 711 F.3d at 453. The Government must also lay a foundation demonstrating that "Big Bro" and Defendant are the same person. Because of the fact-specific nature of the evidence, the Court will not make a final determination as to whether Oliver's statements are admissible under Rule 801(d)(2)(E) until trial.

### B. Government's Rule 402/404(b) Motion

#### 1. Defendant's Prior Convictions

The Government requests that this Court find Defendant's two prior drug-related convictions admissible. (R. 402/404(b) Mot. at 1.) The first conviction was in 2003 for

6

Conspiracy to Possess with Intent to Distribute Cocaine. (*Id.*) The second conviction was in 2010 for Possession of Cocaine with Intent to Distribute. (*Id.*) Defendant argues that these prior drug trafficking convictions are inadmissible character evidence, are not sufficiently relevant to Defendant's current charges, and present too great a risk of prejudice to the jury. (Def.'s Opp'n to R. 402/404(b) Mot. at 4–8, ECF No. 48.)

The Fourth Circuit analyzes four factors to determine whether evidence of prior bad acts is admissible under Rule 404(b). To be admissible, the prior bad acts must be (1) relevant to an issue other than character, (2) necessary, (3) reliable, and (4) the probative value of the evidence should not be substantially outweighed by any confusion or potential prejudice created by the evidence. *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997).

Evidence of prior bad acts satisfies the first prong if it is offered for a purpose other than character, such as proving "'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *Id.* at 994 (quoting FED. R. EVID. 404(b)). Such evidence is necessary under the second prong if it is essential in proving some element of the present crime or gives context to the present crime. *Id.* at 998. Evidence is reliable under the third prong "unless it is so preposterous that it could not be believed by a rational and properly instructed juror." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996)) (internal quotations omitted).

In order for prior drug transactions in a drug conspiracy case to be probative under the fourth prong, "the prior acts must be relevant to the charged offense." *United States*

7

*v. Johnson*, 617 F.3d 286, 297 (4th Cir. 2010). In making this determination, courts examine how "closely [] the prior act is related to the charged conduct in time, pattern, or state of mind" and whether that relation provides a "sufficient nexus" to the present crime. *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012). Without a sufficient nexus to the current charges, prior bad acts present too much prejudicial risk. *See United States v. Hall*, 858 F.3d 254, 278 (4th Cir. 2017); *United States v. Hernandez*, 975 F.2d 1035, 1041 (4th Cir. 1992).

The third prong of reliability is undisputed, thus, the Court will turn to the remaining prongs. Here, the first prong is satisfied. The Government argues the prior drug distribution convictions are relevant to demonstrate knowledge, intent, motive, and absence of mistake regarding his current drug distribution charges. (R. 402/404(b) Mot. at 7.) These are all relevant, non-character purposes that satisfy the *Queen* standard.

The second prong is also satisfied because the prior convictions are necessary to show knowledge and intent. The Government argues that—because Defendant pled not guilty, placing all elements of the crime at issue—evidence of the prior convictions is necessary to show knowledge and intent. (*Id.* at 10.) The Fourth Circuit has held that where a defendant pleads not guilty, intent is placed at issue, and prior bad acts are especially probative. *United States v. White*, 405 F.3d 208, 213 (4th Cir. 2005); *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997). Additionally, prior drug distribution convictions can be admitted in present drug cases with the same defendant to prove knowledge of the drug trade. *United States v. Trice*, 621 Fed. App'x. 151, 154 (4th

8

Cir. 2015). Though Defendant argues that knowledge of the drug trade is not at issue and that evidence presented to prove knowledge is unnecessary, Defendant has not stipulated to either knowledge or intent. (Def.'s Opp'n to R. 402/404(b) Mot. at 4.) Thus, knowledge and intent remain at issue and the prior convictions are necessary.

In evaluating the fourth prong, the factual differences between the two (2) prior convictions are especially important. The Government argues that both prior convictions are highly probative because they show intent, knowledge, preparation, and a plan. (R. 402/404(b) Mot. at 7–10, 11–12.) In analyzing the 2003 conviction, the Court finds that the nexus to the present crime is too tenuous to render it admissible on its face. Though the 2003 conviction is similar—it is a distribution charge that involved digital scales, firearms, and large amounts of cash recovered from Defendant's home—the over twenty (20) years of time between the prior conviction and the current charges create too great a separation for the prior crime's probative value to outweigh its prejudicial effect.

The 2010 conviction also bears substantial similarities to the charges at hand: it involved a distribution of cocaine charge and the police recovered digital scales and multiple cellphones. (*Id.* at 10.) Defendant argues that the crimes are dissimilar because the underlying facts differ. (Def.'s Opp'n to R. 402/404(b) Mot. at 4–5.) In the 2010 conviction, Defendant was pulled over and, when he was searched, the police found a bag containing nineteen (19) grams of cocaine on his person. (*Id.*) Defendant contends that these circumstances are different from the current charges because Defendant is charged with distributing large amounts of drugs. (*Id.*) However, this difference is not enough to cause the balance to shift towards prejudice. Both cases involve cocaine and the cocaine

9

was similarly packaged, in plastic wrapping. Additionally, similar drug paraphernalia was found in each case. These similarities give the 2010 conviction significant probative value.

Defendant also argues that this case is analogous to *Hall*, 858 F.3d at 260, where the Fourth Circuit found that a prior simple possession of marijuana charge and three (3) prior possession of marijuana with intent to distribute charges were inadmissible. *Id.* However, *Hall* is distinguishable from the present case. In *Hall*, the Court deemed the simple possession charge to be irrelevant and overly prejudicial because of the different *mens rea* requirements between a simple possession charge and a drug trafficking charge. *Id.* at 259–60. The three (3) prior possession with intent to distribute charges in *Hall* were inadmissible because the Government failed to present *any* evidence linking them to the charges at hand in time, location, pattern, or state of mind. *Id.* at 260. Ultimately, "the absence of factual similarity and temporal proximity between Defendant's prior possession with intent to distribute convictions and the conduct alleged in the present case renders those prior convictions irrelevant . . . ." *Id.*

Here, the prior charge involved distribution and the Government has argued that there are multiple factual similarities that link the two charges. Additionally, the time difference is not so great to bar the 2010 conviction for lack of temporal proximity. *See White*, 405 F.3d at 212–14 (finding testimony of defendant's prior drug dealing activities from over a decade prior was admissible to prove knowledge and intent); *United States v. Ro*, 465 Fed. App'x 217, 220–21 (4th Cir. 2012) (holding that prior convictions that were ten (10) years old were admissible due to a common scheme). Considering the

10

differences between this case and *Hall*, the Court does not find the holding in *Hall* applicable and finds that the probative value of the 2010 conviction outweighs its prejudicial effect.

Accordingly, the Court finds that evidence of the 2003 conviction is not admissible in the Government's case in chief. However, should such evidence become relevant upon rebuttal or cross-examination of Defendant, the Government may request the Court to reconsider its admissibility.

Conversely, the Court finds that the 2010 conviction is admissible in the Government's case in chief. However, the Court believes that a limiting instruction is appropriate and will provide one to the jury at trial. *See Queen*, 132 F.3d at 997 (finding that a limiting instruction is a useful tool to protect against the risk of unfair prejudice). Finally, this Court would like a final opportunity to review the admission of the 2010 conviction in its full context at trial. Thus, prior to introducing any evidence related to Defendant's 2010 conviction, the Government shall request to approach the bench and proffer the basis for admissibility of such evidence.

### 2. Defendant's Failure to File Tax Returns

The Government also requests that this Court admit evidence of Defendant's failure to file personal tax returns in the years 2018–2021 and failure to file corporate tax returns in the years 2019–2023. (R. 402/404(b) Mot. at 1, 13.) The Government argues that this evidence can be admitted as intrinsic evidence under Rule 402 or, alternatively, under Rule 404(b) as extrinsic evidence of "bad acts." (*Id.* at 13.) Defendant argues that

11

this evidence is not intrinsic to the case and is impermissible character evidence under Rule 404(b). (Def.'s Opp'n to R. 402/404(b) Mot. at 8–9.)

The Fourth Circuit has held that evidence of other bad acts is "intrinsic" when the acts are "inextricably intertwined [with the charged crime] or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996) (quoting *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993)) (internal quotations omitted). Evidence is considered to be "inextricably intertwined" with the present charges if it plays a key role in a witness' account of the circumstances surrounding the present charges. *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010) (internal citation omitted). In the Fourth Circuit, "evidence of unexplained wealth is relevant in a narcotics prosecution as evidence of illegal dealings and ill-gotten gains." *United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir. 1986).

The Government argues that Defendant's failure to file tax returns is intrinsic to its case because it plays a key role in the "full presentation" of the case. (R. 402/404(b) Mot. at 13.) The Government plans to pair this evidence with other admissible evidence to demonstrate that Defendant obtained his unexplained wealth through drug trafficking. (*Id.* at 13–14.) Essentially, the Government contends that the failure to file tax returns during the alleged course of the conspiracy is part and parcel of one criminal episode. (*Id.*)

The Court agrees. Defendant's failure to file tax returns during the pendency of the conspiracy is relevant and crucial to this case. The evidence shows that Defendant

12

can provide no legal explanation for his wealth throughout the years leading up to the charges. Thus, the failure to file returns demonstrates unexplained wealth and is inextricably intertwined with the drug trafficking charges at hand.

Even if this Court were to rule that the evidence is not intrinsic, Defendant's failure to file tax returns would still be admissible under Rule 404(b). As discussed above, the Fourth Circuit standard for the admission of Rule 404(b) evidence is as follows: the prior bad acts must be (1) relevant to an issue other than character, (2) necessary, (3) reliable, and (4) the probative value of the evidence should outweigh any confusion or potential prejudice created by the evidence. *Queen*, 132 F.3d at 997. The Fourth Circuit has found that a failure to file tax returns is admissible under Rule 404(b) to demonstrate that a defendant's earnings exceeded his legal income. *United States v. Ingram*, 556 Fed. App'x 203, 211 (4th Cir. 2014).

Like in *Ingram*, the Court finds Defendant's failure to file tax returns admissible under Rule 404(b). As to the first *Queen* factor, the Court finds this evidence to be relevant to something other than character: it demonstrates unexplained wealth as well as intent, knowledge, and plan. Because knowledge and voluntary intent are essential elements of the present crime, and because the evidence in question tends to prove those elements, the evidence is necessary, satisfying the second factor. The third *Queen* factor, reliability, is not at issue. Finally, the Court finds that the fourth factor is met because the probative value of the evidence is not outweighed by the risk of prejudicial effect on the jury. The evidence is highly probative because it illustrates Defendant's knowledge of the conspiracy and plan for carrying it out undetected.

Accordingly, the Court finds that evidence of Defendant's failure to file personal tax returns in the years 2018–2021 and to file corporate tax returns in the years 2019–2023 is admissible both under Rule 402 as intrinsic evidence and, alternatively, under Rule 404(b) as extrinsic evidence.

### C. Government's Supplemental Discovery Motion

The Government seeks to supplement the discovery it was required to provide to Defendant on January 8, 2024, with four (4) reports: a jewelry appraisal and three (3) Bureau of Alcohol, Tobacco, Firearms, and Explosives reports. (Suppl. Disc. Mot. at 1–2.) The reports total seventeen (17) pages and the Government states that they were not created until after the January 8 discovery deadline. (*Id.* at 2.) The Government also seeks to use a three-page Drug Enforcement Agency lab report which was not created until late January. The Government argues that the additional evidence is minimal, relates to evidence already in Defendant's possession, and that Defendant has ample time to review it prior to trial. (*Id.* at 3.)

Defendant argues that the Government has a history of late disclosures in this case and has flooded him with discovery. (Def.'s Opp'n to Suppl. Disc. Mot. at 1–4, ECF No. 51.) He contends that these reports should have already been prepared and that the late disclosures violate Defendant's due process rights by preventing Defendant from preparing a complete defense. (*Id.* at 5–8.) During oral argument, Defendant also argued that the Government's redaction of the discovery materials was so extensive that it impeded Defendant's ability to adequately prepare a defense. The Government

14

responded that it only redacted information related to confidential sources and non-parties.

The Court finds that allowing the Government to use the five (5) reports that were created after the discovery deadline of January 8, 2024, will not prejudice Defendant. Four (4) of the reports were provided to Defendant on January 19, 2024, and the other report was provided on January 29, 2024, just three (3) days after the Government received it. Considering that the reports only totaled twenty (20) pages and that Defendant had sufficient time to review them prior to trial in order to prepare his defense, the Court finds that Defendant's due process rights were not violated. Additionally, based on the Government's representations, it appears that the discovery redactions were appropriate. Accordingly, the Supplemental Discovery Motion will be granted.

**D. Defendant's Motion to Exclude**

Defendant argues that five (5) different broad categories of evidence should be excluded as they are irrelevant: (1) Defendant's romantic relationships, (2) Defendant's possession of a firearm that he was not charged with and that was not tested, (3) gang affiliation, (4) Defendant's possession or distribution of heroin, and (5) any alleged unadjudicated prior bad acts. (Mem. in Supp. of Mot. to Exclude at 1, ECF No. 46.)

"Evidence is relevant if: it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." FED. R. EVID. 401. Relevant evidence is generally admissible but can be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice" or if another rule or law requires its exclusion. *Id.* at 402, 403.

15

Defendant generally argues that the evidence he references is irrelevant because it does not make any fact in controversy more or less probable. (Mem. in Supp. of Mot. to Exclude at 2.) Alternatively, Defendant argues that any probative value that the evidence has is substantially outweighed by its prejudicial effect. (*Id.*) The Court will evaluate each category of evidence in turn.

### 1. Evidence related to Defendant's romantic relationships

The Government describes two (2) circumstances in which details about Defendant's romantic relationships may be used in trial. The first is related to "Y," a possible love interest that texted with Defendant. (Gov't's Opp'n to Mot. to Exclude at 1–3, ECF No. 52.) In these text messages, Defendant states that the police found a gun in his house, that he was not supposed to have it, and that, if he is arrested, he will go to prison. (*Id.* at 2.) Defendant and Y also discuss a plan to help Defendant flee to a foreign country, even though the police seized his passport. (*Id.*) The Government argues that this evidence demonstrates Defendant's consciousness of guilt. It also argues that Defendant's romantic relationship with Y is relevant because it is "relevant to the respective motives underlying these topics of conversation" and goes to the weight and credibility of the evidence. (*Id.*)

The second circumstance involves E.C., the mother of Defendant's child. (*Id.* at 3.) The Government does not plan to call E.C. as a witness. However, if Defendant calls E.C., the Government will seek to enter text messages between E.C. and Defendant that detail domestic abuse. (*Id.*) The Government argues that this evidence goes to her

16

credibility—her romantic relationship with Defendant and a potential fear of abuse could motivate her to testify untruthfully. (*Id.*)

The Court finds that evidence of Defendant's romantic relationships, in the limited contexts described above, is relevant. Thus, at this time, the Court will not exclude this evidence because its admissibility largely depends on the testimony at trial.

### 2. Evidence that Defendant possessed a firearm which was neither charged nor tested

During oral argument, the Government stated that it will call several witnesses who will testify that they saw Defendant possess firearms. It will also move to enter photographs depicting Defendant with firearms, one of which clearly shows the serial number of a firearm that he is charged with unlawfully possessing. Defendant argued that any evidence relating to firearms that Defendant has not been charged with, and that have not been tested, should be excluded because there is no evidence that they meet the federal definition of a firearm and they are prejudicial to Defendant.

The Government responded that testing is not required to establish that an item is a firearm under federal law. In its opposition, the Government also argues that evidence of possession of uncharged firearms is admissible because it is relevant to Defendant's knowledge and intent as to the § 922(g)(1) charge. (Gov't's Opp'n to Mot. to Exclude at 4.) Additionally, the Government states that "firearms are 'tools of the trade' in the illegal drug business." (*Id.*)

The Court agrees that evidence showing Defendant possessed firearms is relevant and is admissible under Rule 404(b). It goes to his knowledge and intent to possess

17

illegal firearms and firearms are also a tool of the drug trade. *See United States v. Trent*, 443 F. App'x 860, 862–63 (4th Cir. 2011) (holding that evidence of possession of an uncharged firearm was admissible to show that Defendant knowingly possessed the firearm with which he was charged); *United States v. Ricks*, 882 F.2d 885, 892 (4th Cir. 1989) ("[E]vidence of firearms is relevant in narcotics conspiracy cases." (internal citation omitted)). Accordingly, the Court declines to exclude any evidence related to Defendant's possession of firearms at this time.

### 3. Evidence that Defendant is affiliated with a gang

The Government states that it will not seek to enter any evidence that Defendant is affiliated with a gang. (*Id.* at 5.) The Court agrees that such evidence is irrelevant and would be unfairly prejudicial to Defendant. Thus, any evidence that Defendant is affiliated with a gang shall be excluded.

### 4. Evidence that Defendant possessed or distributed heroin

Consistent with the Court's rulings on other motions (*see, supra* Sec. II.A), any evidence that Defendant possessed or distributed heroin is relevant to the extent that heroin was used as a vehicle to distribute other drugs that Defendant is charged with. Thus, the Court will not exclude evidence of possession or distribution of heroin at this time. Prior to introducing any evidence related to heroin that the Court has not specifically ruled on, the Government shall request to approach the bench and proffer the basis for admissibility of such evidence.

### 5. Evidence of any alleged unadjudicated prior bad acts

Defendant provides no context for any specific prior bad acts that he believes should be excluded. (*See* Mem. in Supp. of Mot. to Exclude at 1–3.) Determinations about whether bad acts are admissible are context and fact specific. Without further detail, the Court is unable to properly consider the admissibility of such evidence. Thus, any such matters will be considered in context at trial.

### E. Defendant's Motion to Compel

Defendant moves that the Court compel the Government to produce the criminal history of one of the Government's witnesses. (Mot. to Compel at 1.) Defendant requests that the history include all of the witness' convictions and the jurisdictions in which he was convicted. (*Id.*) During oral argument, Defendant represented that he needs the criminal record and corresponding jurisdictions of the prior convictions in order to evaluate their use for impeachment purposes. Defendant believes that the witness may have a conviction of identity theft that is over ten (10) years old but that it may be admissible under Rule 609(b). The Government argued that it should not be required to turn over criminal history that is older than ten (10) years because any conviction beyond ten (10) years is not admissible under Rule 609(b).

The Court finds that, though it is unclear whether the conviction of identity theft is admissible for purposes of impeachment, Defendant should be afforded the opportunity to review the witness' entire criminal history so that he may craft his defense. Accordingly, Defendant's Motion to Compel will be granted. However, before Defendant asks the witness any questions related to convictions older than ten (10) years

19

for the purposes of impeachment, Defendant shall approach the bench and proffer as to why such convictions are admissible.

### III. Conclusion

The Court's opinion on these numerous Motions is fairly general. Due to the nature of the Motions and the way they were presented at oral argument, the Court has attempted to be as specific as possible. Many of the matters are context and issue specific and are best handled at trial, if necessary. The Court additionally notes that any issue not specifically ruled on here, or on the record, is too fact specific and will be considered in the context of the questions asked at trial.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: February 22, 2024
Richmond, Virginia